NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANNY OROPEZA,<br><br>　　　　Plaintiff,<br>　v.<br><br>THE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant.<br>_____/ | No. C07-06070 HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 15 and 16]** |

　　　Plaintiff Danny Oropeza appeals a final decision by the Commissioner of the Social Security Administration ("defendant" or "Commissioner") finding that he is not disabled within the meaning of the Social Security Act. Presently before this court are the parties' cross-motions for summary judgment.[1] The matter was deemed submitted without oral argument. Upon consideration of the moving and responding papers, and for the reasons set forth below, the parties' cross-motions are granted in part and denied in part, and the case is remanded for reconsideration consistent with this opinion.

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

## I. BACKGROUND

Oropeza was born in 1978 and was 28 years old at the time the Administrative Law Judge ("ALJ") rendered the decision under consideration here. He completed high school, where he attended special education classes. His past work experience consists of short-lived, part-time jobs, including work as a school maintenance worker and a seasonal retail sales associate.

Plaintiff previously received supplemental security income as a child. Those payments stopped in 2002 when he was incarcerated for burglary. He subsequently was released; and, in December 2004, he filed an application for supplemental security income, claiming to be disabled as of December 1, 2004 due to morbid obesity, sleep apnea, being born with only one kidney, back pain and a learning disability. (AR 63-65, 84). The application was denied initially and on reconsideration. Plaintiff requested a hearing before an ALJ, which was held on November 8, 2006.

In a decision dated December 27, 2006, the ALJ concluded that plaintiff was not disabled under the Social Security Act. She found that Oropeza has not engaged in substantial gainful activity. She concluded that plaintiff "is affected by morbid obesity, a history of apnea, and intermittent cellulit[is] and gastroenteritis" and that these are "severe" impairments. (AR 16). However, the ALJ later described plaintiff's "severe" impairments as "morbid obesity, a history of sleep apnea, and a learning disorder." (AR 17). In any event, she found that plaintiff does not have an impairment listed in or medically equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ further found that Oropeza retains the residual functional capacity ("RFC") "to engage in sustained semi-sedentary to sedentary activities, while avoiding work requiring sustained reading or writing" (AR 18) and that his impairments do not prevent him from performing a significant number of electronics production and semiconductor loading jobs in the local economy.

The Appeals Council denied Oropeza's request for review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.[2]

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. That decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

## III. DISCUSSION

As noted above, the ALJ found that Oropeza "has the residual functional capacity to engage in sustained semi-sedentary to sedentary activities, while avoiding work requiring sustained reading or writing." (AR 18). Plaintiff contends that the RFC finding should not be affirmed because (1) the term "semi-sedentary" is undefined; (2) the ALJ improperly rejected the opinion of plaintiff's treating physician, Herman Hyatt, M.D.; (3) the ALJ's findings on obesity are contrary to pertinent case law and administrative rulings; (4) the ALJ improperly

---

[2] Plaintiff notes, in passing, that the record before this court does not contain the records from his prior application for, and award of, benefits. He believes that the ALJ considered those records in rendering the decision at issue here and says that those files may have clarified his medical/mental condition here. No specific error is assigned as to the non-association of those files, however.

United States District Court
For the Northern District of California

1  discounted plaintiff's symptom-reporting; and (5) the ALJ failed to give proper consideration to
2  all of plaintiff's impairments. Additionally, plaintiff argues that there is no support for the
3  ALJ's conclusion that the testimony of the vocational expert ("VE") is consistent with the
4  Dictionary of Occupational Titles ("DOT").

**A.    "Semi-Sedentary"**

Plaintiff contends that the ALJ's RFC finding cannot stand because the term "semi-sedentary" is not defined by the ALJ, the VE, or agency regulations. However, even assuming the use of that term was an error, this court finds any such error to be harmless. Whether or not the term "semi-sedentary" is defined, the ALJ found that Oropeza is capable of sedentary work, a work classification that is described in the agency's regulations. See 20 C.F.R. § 416.967(a). And, the VE testified as to the existence of jobs in the local economy that an individual limited to sedentary work could perform. (AR 476-77).

**B.    Dr. Hyatt's Opinion**

Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician Herman Hyatt, M.D. According to Dr. Hyatt, Oropeza has been permanently disabled since birth due to morbid obesity and having been born with only one kidney. (AR 433-447). In an August 2006 fill-in RFC form, Dr. Hyatt remarked that plaintiff tires easily, has shortness of breath, cannot stand for long or walk well, and has pain on movement. (AR 433). Observing that "[t]he record does not contain an apparently objective assessment of Mr. Oropeza's residual functional capacity," the ALJ went on to conclude that Dr. Hyatt's opinions "are not entitled to significant weight." (AR 19). To the extent the ALJ's rejection of Dr. Hyatt's opinion was based upon improper findings as to plaintiff's obesity (discussed more fully below in Section C), this court finds that the ALJ erred. Nevertheless, it concludes that any error is harmless because the ALJ's decision to reject Dr. Hyatt's opinion as to disability is otherwise supported by substantial evidence.

The opinion of a treating physician generally is given more deference than the opinion of non-treating physician because a treating physician is deemed likely to be the medical professional most able to provide a detailed, longitudinal picture of the claimant's impairment.

4

1   20 C.F.R. § 416.927(d)(2).  A treating physician's opinion, however, is not binding on an ALJ
2   with respect to the existence of an impairment or the ultimate determination of disability.
3   Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (citing Morgan, 169 F.3d at 600).
4   Indeed, the determination as to whether an individual is disabled is reserved specifically to the
5   Social Security Administration.  20 C.F.R. § 416.927(e).

6   Where there is no conflict between a treating doctor's opinion and the medical evidence,
7   the treating physician's opinion may be rejected only for "clear and convincing reasons."
8   Thomas, 278 F.3d at 957.  Even when the treating physician's opinion is controverted, the ALJ
9   may reject that opinion only by making "'findings setting forth specific, legitimate reasons for
10  doing so that are based on substantial evidence in the record.'"  Id. (quoting Magallanes, 881
11  F.2d at 751).  "The ALJ can 'meet this burden by setting out a detailed and thorough summary
12  of the facts and conflicting clinical evidence, stating his interpretation thereof, and making
13  findings.'"  Id.  "The ALJ must do more than offer his own conclusions.  He must set forth his
14  own interpretations and explain why they, rather than the doctors', are correct."  Regennitter v.
15  Comm'r of the Soc. Security Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) (quoting Embrey v.
16  Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

17  Here, the ALJ noted that Dr. Hyatt had been plaintiff's family physician since his
18  childhood.  However, she partially discounted Dr. Hyatt's opinions because Dr. Hyatt (a) "has
19  apparently seen [Oropeza] rarely in recent years"; and (b) "describes [plaintiff] as being far
20  more incapable of physical activity than is supported."  (AR 19).  When Dr. Hyatt opined in
21  August 2006 that Oropeza was disabled, he acknowledged that he did "not see [plaintiff] much
22  in recent times."  (AR 433).  When Dr. Hyatt opined in a July 6, 2005 report that Oropeza was
23  disabled, he had not seen plaintiff since January 27, 2004 when he treated Oropeza for back
24  pain.  (AR 233, 236-242).

25  Oropeza acknowledges that he had little contact with Dr. Hyatt in recent years, but
26  argues that the ALJ should have attributed far more significance to Dr. Hyatt's opinions as to
27  his physical impairments because Dr. Hyatt had been his family physician since birth.
28  However, the ALJ's finding that Dr. Hyatt's opinion is not a valid reflection of plaintiff's actual

5

1  capacity is supported by substantial evidence.  Dr. Hyatt's January 27, 2004 treatment records
2  show that Oropeza had normal lumbar alignment and structure.  (AR 17, 237, 239).
3  Additionally, other medical evidence demonstrates that Oropeza had clear lungs, no acute
4  cardiopulmonary disease, treatment with Coumadin for right leg deep venous thrombosis, no
5  evidence of deep venous thrombosis in the left leg, completely resolved cellulitis, and no
6  problems with having one kidney.  (AR 17, 144, 257, 265, 346, 399, 400).

While the record might be subject to more than one rational interpretation, based upon review of the record as a whole, this court finds no error in the ALJ's decision to discount Dr. Hyatt's opinions.  Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.  Accordingly, as to this issue, plaintiff's motion is denied and defendant's motion is granted.

**C.     Credibility Determination**

Plaintiff contends that the ALJ failed to provide sufficiently specific reasons for partially discrediting his testimony as to the severity of his symptoms.

If an ALJ finds the claimant's testimony unreliable as to the severity of pain and impairments, the ALJ must make a credibility determination with sufficiently specific findings to permit the court to conclude that the claimant's testimony was not arbitrarily discredited.  See Thomas, 278 F.3d at 958.  In making a credibility determination, the ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  But to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief'" and must "'cit[e] the reasons why the [claimant's] testimony is unpersuasive.'"  Id. (quoting Morgan, 169 F.3d at 599).  Where there is no affirmative evidence of malingering, the "'reasons for rejecting the claimant's testimony must be clear and convincing.'"  Id.; Regenitter, 166 F.3d at 1296 (citing Lester v. Chater, 81 F.3d

1    821, 834 (9th Cir. 1995)).  If a credibility finding is supported by substantial evidence in the

2    record, the court may not engage in second guessing.  Thomas, 278 F.3d at 959.

3          Additionally, Social Security Administration rulings specify appropriate bases for

4    rejecting a claimant's testimony; and, the ALJ's decision to reject a claimant's testimony cannot

5    be supported by reasons that do not comport with the agency's rules.  Orn, 495 F.3d at 635-36.

6    "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for

7    truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities,

8    and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed

9    course of treatment."  Id. at 636 (internal quotations and citations omitted).

10         In the instant case, the ALJ noted that plaintiff testified about a number of claimed

11   limitations, including shortness of breath, an ability to stand for only five minutes, an ability to

12   lift only 10 pounds, an ability to sit for hours (with a propensity to fall asleep unless someone is

13   talking to him), and a desire to avoid straining his back.  (AR 18).  The ALJ found that

14   plaintiff's obesity condition could reasonably be expected to impose some limitations and stated

15   that he did show some difficulty breathing and moving around.  She nevertheless discounted his

16   testimony as to the severity of his symptoms because she concluded that his professed level of

17   incapacity was the result of "habits" and "choice" and "not the effect of some medical

18   condition" and "not imposed by medical impairments alone."  (AR 19).

19         Oropeza argues that the ALJ failed to consider the effects, if any, flowing from his sleep

20   apnea and instead based her credibility determination on unwarranted findings as to his obesity

21   in contravention of Social Security Ruling 02-1p.  Without squarely addressing the provisions

22   of that administrative ruling, the Commissioner argues that the ALJ's findings are supported by

23   substantial evidence because (a) the ALJ noted that plaintiff was put on a "very light work

24   assignment" while he was in prison; and (b) plaintiff's own medical sources encouraged

25   plaintiff to exercise and reported a "significant lack of motivation on [Oropeza's] part to get

26   himself out of the bed."  (AR 17, 19, 196, 317, 318, 346-47).

27         But the record indicates that, although he was still obese, plaintiff was at least 30-40

28   pounds lighter during his incarceration; and, he testified that for his prison work duty, he would

1  simply "go into the office and just like sit there and talk to [his boss.]"  (AR 474).  Additionally,
2  the Social Security Administration recognizes that the goals for treating obesity generally are
3  modest and that treatment often is ineffective.  <u>Orn</u>, 495 F.3d at 636 (citing SSR 02-1p).  Thus,
4  before it can be used as a basis for discounting an obese claimant's credibility, a failure to
5  exercise and lose weight must have been a "prescribed treatment," and there must be clear
6  evidence that the treatment would be successful.  See <u>Orn</u>, 495 F.3d at 636-37.

7        Here, Oropeza's treatment providers noted on discharge instruction sheets that exercise
8  and a low-calorie diet were "recommend[ed]" and "advised."  (AR 196, 301, 317, 318, 346-47).
9  However, a mere recommendation is not "prescribed treatment" as that term is defined by the
10 Social Security Administration.  <u>See</u> SSR 02-1p at 9 ("The treatment must be prescribed by a
11 treating source, as defined in our regulations at 20 C.F.R. 404.1502 and 416.902, not simply
12 recommended.  A treating source's statement that an individual 'should' lose weight or has
13 'been advised' to get more exercise is not prescribed treatment."); <u>see also</u> <u>Orn</u>, 495 F.3d at 637
14 (concluding that a patient discharge instruction sheet recommending a diet was not "prescribed
15 treatment").  Even if the discharge instructions were a "prescribed treatment," there is no clear
16 evidence in the record that the prescription would succeed in eliminating or ameliorating
17 plaintiff's obesity.  <u>Orn</u>, 495 F.3d at 637.

18       Moreover, although the record indicates that plaintiff's sleep apnea condition was much
19 improved with the use of a CPAP machine, the ALJ made no findings as to whether this treated,
20 but ongoing, severe impairment reasonably could have produced the symptoms alleged.

21       Accordingly, the court finds that the ALJ's credibility determination is not supported by
22 substantial evidence in the record and that remand is required.  As to this issue, plaintiff's
23 motion is granted and defendant's motion is denied.

24 **D.**   **ALJ's RFC Finding and VE Hypothetical**

25       As noted above, the ALJ first described plaintiff's "severe" impairments as "morbid
26 obesity, a history of apnea, and intermittent cellulit[is] and gastroenteritis" (AR 16), but then
27 later found that plaintiff's severe impairments were "morbid obesity, a history of sleep apnea,
28 and a learning disorder."  (AR 17).  The hypothetical posed to the VE assumed "a person the

1  same age, education, and work experience as [Oropeza]" and further assumed that the
2  hypothetical individual "require[d] a sedentary job, not requiring reading or writing." (AR
3  476). Oropeza argues that the ALJ's RFC findings are not supported by substantial evidence
4  because she failed to properly consider whether his cellulitis, gastroenteritis, sleep apnea and
5  learning disorder limited any function and, relatedly, that her hypothetical to the VE did not
6  accurately reflect all of his limitations.

7  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the
8  record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms,
9  including pain, that are reasonably attributed to a medically determinable impairment.'"
10 Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p).
11 Additionally, the adjudicator must consider limitations and restrictions imposed by all of an
12 individual's impairments, including those that are not severe. 20 C.F.R. § 416.945(a)(2); SSR
13 96-8p at 5. Hypothetical questions posed to a vocational expert must set out all the limitations
14 and restrictions of the particular claimant. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.
15 1988). "The ALJ's depiction of the claimant's disability must be accurate, detailed, and
16 supported by the medical record." Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573,
17 578 (9th Cir. 1988). "If the assumptions in the hypothetical are not supported by the record, the
18 opinion of the vocational expert that [a] claimant has a residual functional working capacity has
19 no evidentiary value." Embrey, 849 F.2d at 422.

20 With respect to plaintiff's cellulitis and gastroenteritis, the court finds no error. The
21 ALJ noted that Oropeza had episodes of gastroenteritis in August and September 2004 and that
22 plaintiff remarked during one of those incidents that he believed he ate a "bad hot dog" at work
23 at the county jail. (AR 17, 141-151). The ALJ also correctly noted that Oropeza recovered
24 without any lasting residuals. (Id.). Additionally, the ALJ rightly observed that plaintiff's
25 cellulitis condition was completely resolved without recurrence. (AR 18, 346).

26 Defendant argues that the ALJ's finding that plaintiff has the RFC to perform sedentary
27 work is supported by substantial evidence because Oropeza testified that he can lift up to ten
28 pounds, sit for hours, and do some walking (i.e., he can walk in "little" stores, but not big ones).

9

1  (AR 470-72). The Commissioner contends that this is sufficient to sustain the ALJ's finding
2  that plaintiff can perform sedentary work. See 20 C.F.R. § 416.967(a) (describing "sedentary
3  work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting
4  or carrying articles like docket files, ledgers, and small tools," as well as "sitting" with "a
5  certain amount of walking and standing."). Indeed, defendant argues that, in finding Oropeza
6  capable of performing sedentary work, the ALJ "gave Plaintiff the benefit of the doubt" because
7  consulting physicians Drs. Reddy and Peery opined that Oropeza is capable of performing
8  "medium" work. (AR 225-32).

9  However, as noted above, the ALJ found no apparently valid assessment of plaintiff's
10 RFC in the record, and she made no findings as to the opinions of consulting physicians Drs.
11 Reddy and Peery. See Bray v. Comm'r Soc. Security Admin., 554 F.3d 1219, 1225 (9th Cir.
12 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision
13 based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations
14 that attempt to intuit what the adjudicator may have been thinking."). Moreover, other than to
15 note that it is a severe impairment, the ALJ made no findings as to plaintiff's treated, but
16 continuing, sleep apnea impairment. (AR 16-17). Additionally, determining RFC requires
17 consideration of both an individual's exertional and non-exertional capabilities. See SSR 96-
18 8p, 1996 WL 374184 (S.S.A.). Here, it is not clear that the ALJ properly considered whether
19 Oropeza's mental impairment might affect functions beyond the ability to read and write on a
20 sustained basis. The ALJ relied upon the April 2006 consultative psychological assessment by
21 Ubaldo Sanchez, Ph.D. and stated:

> Dr. Sanchez noted that the claimant interacted without difficulty, responded to all questions during testing, and manifested adequate judgment. Dr. Sanchez diagnosed learning disorder NOS, depressive disorder NOS and borderline intellectual functioning. Dr. Sanchez expressed his opinion that the claimant had deficits in his ability to analyze complex problems. Performance on the WMS-III test indicated below average memory skills.

26 (AR 18). She then remarked that Dr. Sanchez nonetheless said that Oropeza was "viewed as
27 being able to perform simple tasks" (Id.). The ALJ then went on to state that the VE confirmed

10

that jobs identified during the hearing were "compatible" with Dr. Sanchez's assessment.  (AR 20).

However, the ALJ did not address Dr. Sanchez's qualifier that "given my one-time evaluation of [Oropeza], I am unable to determine if he is able to tolerate the stress of an 8-hour day, 40-hour workweek on a consistent basis."  (AR 271).  Nor did the ALJ address Dr. Sanchez's conclusion that plaintiff "would have mild moderate to marked difficulties concentrating, focusing, and keeping up with the pace of a working environment."  The oversight is not insignificant because when plaintiff's attorney asked the VE to consider this remark by Dr. Sanchez, the VE testified that pace issues would present a problem with respect to the jobs identified.  (AR 479).

Accordingly, the court finds that the ALJ's RFC findings are not supported by substantial evidence in the record.  As to this issue, plaintiff's motion is granted and defendant's motion is denied.  Remand is required.

### E.  VE's Testimony

Because the court finds that the ALJ's RFC assessment requires remand, it does not address his remaining argument as to whether the ALJ properly inquired into and resolved any conflicts between the VE's testimony and the DOT.  However, the court notes that, under the Commissioner's rulings, an ALJ has an affirmative duty to inquire into any conflicts between the VE's testimony and the DOT classifications, and to obtain a "reasonable explanation" for any conflicts.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir.2007).  If the ALJ fails to take these steps, the court cannot determine whether the ALJ properly relied on the VE's testimony.  Id. at 1153-54.

### F.  Plaintiff's Request for Remand for Immediate Payment of Benefits

Because it is not clear from the record that the claimant is entitled to benefits, this court does not find it appropriate to remand for immediate payment of benefits.  See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004) (remand for immediate payment of benefits is reserved for "rare circumstances" where there are no outstanding issues to be resolved and it is clear from the record that the claimant is entitled to benefits).

11

### IV.  ORDER

Based on the foregoing, IT IS ORDERED THAT the parties' cross-motions for summary judgment are granted in part and denied in part, and the matter is remanded for further proceedings consistent with this opinion.   The Clerk of the Court shall close the file.

Dated:    September 30, 2009

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-6070 Notice electronically mailed to:**

James Hunt Miller jim_miller0@yahoo.com

Mark Win mark.win@ssa.gov

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**